JAN 22 2026 AM 9:22
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AT NEW HAVEN

| | | |
|---|---|---|
| Christopher A. Ambrose, | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-cv-01151-SVN |
| | ) | |
| v. | ) | |
| | ) | |
| Frank Parlato Jr., | ) | |
| Defendant. | ) | DATE: January 22, 2026 |

<u>**DEFENDANT'S OBJECTION TO PLAINTIFF'S DRAFT
RULE 26(f) DISCOVERY PLAN**</u>
(Defendant Appears Specially and Does Not Consent to Personal Jurisdiction)

Defendant Frank Parlato Jr., appearing specially and expressly reserving all objections to personal jurisdiction, venue, and service of process, respectfully submits this Objection to Plaintiff's proposed Rule 26(f) discovery plan ("Exhibit A"). Plaintiff's draft contains factual mischaracterizations, procedurally improper assertions, and discovery demands that are premature, overbroad, and constitutionally infirm.

This Objection is submitted in good faith and in accordance with the Federal Rules of Civil Procedure.

**I. PENDING JURISDICTIONAL CHALLENGE AND REQUEST FOR STAY OF DISCOVERY**

Defendant has filed a pending Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), asserting that this Court lacks personal jurisdiction. Personal jurisdiction is a threshold issue that must be

1

resolved before the parties are required to engage in discovery.

Absent a prima facie showing of personal jurisdiction, Defendant respectfully submits that discovery should be stayed in its entirety. Requiring discovery before resolving jurisdiction would be premature, unduly burdensome, and inconsistent with judicial economy.

In the alternative, if the Court permits any discovery prior to ruling on the Motion to Dismiss, such discovery should be strictly limited to jurisdictional issues only.

## II. IMPROPER "UNDISPUTED FACTS" SECTION

Plaintiff's proposed Rule 26(f) plan includes a section labeled "Undisputed Facts" that improperly presents highly contested allegations as stipulated facts. Among other assertions, Plaintiff claims:

- that Defendant authored all cited articles;
- that Defendant had an "intimate relationship" with Plaintiff's ex-wife;
- that Defendant acted with malice or revenge;
- that Defendant published hundreds of articles about Plaintiff.

These assertions are expressly disputed and inappropriate for inclusion in a Rule 26(f) report. Their inclusion improperly attempts to create a prejudicial procedural record and Defendant objects to them in full.

## III. OBJECTION TO OVERBROAD AND INTRUSIVE DISCOVERY DEMANDS

Plaintiff's discovery proposal seeks intrusive and constitutionally protected materials, including:

- identities, IP addresses, MAC addresses, and metadata of anonymous commenters;
- CMS logs, server logs, and browser fingerprints;
- internal editorial communications and review processes;

2

- alleged coordination with third parties and speculative financial motives.

These requests implicate core First Amendment protections, including editorial discretion and the right to anonymous speech, recognized in Branzburg v. Hayes, 408 U.S. 665 (1972), McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995), and Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088 (W.D. Wash. 2001).

Defendant further objects that the proposed discovery is irrelevant and disproportionate under Fed. R. Civ. P. 26(b)(1).

## IV. ELECTRONICALLY STORED INFORMATION (ESI) OBJECTIONS

Plaintiff seeks forensic-level technical data and backend access to Defendant's websites and comment systems. Defendant objects to any demand for:

- forensic imaging of devices or platforms;
- disclosure of server logs, CMS backend data, or commenter identities;
- technical identifiers absent a compelling showing of necessity and court approval.

Defendant will preserve responsive ESI in reasonably accessible formats but objects to discovery that is intrusive, disproportionate, or constitutionally suspect.

## V. RESERVATION OF RIGHTS UNDER RULE 26(c)

Defendant expressly reserves the right to seek a protective order under Fed. R. Civ. P. 26(c) should Plaintiff attempt discovery that is abusive, overreaching, or designed to chill protected speech.

## VI. CONSTITUTIONAL LIMITATIONS ON RELIEF SOUGHT

Plaintiff seeks permanent injunctive relief compelling removal of published content. Such relief constitutes a prior restraint on speech and is presumptively unconstitutional. See Nebraska Press

Ass'n v. Stuart, 427 U.S. 539 (1976); Tory v. Cochran, 544 U.S. 734 (2005).

Defendant objects to any discovery or relief that would result in censorship, content removal, or suppression of lawful speech on matters of public concern.

## VII. GOOD FAITH COMPLIANCE AND REQUEST FOR CONFERENCE

Defendant has acted in good faith throughout these proceedings and will participate in appropriate discovery, if any, after the Court resolves the pending jurisdictional and Rule 12(b)(6) motions. Should disputes persist, Defendant welcomes a status or scheduling conference under Local Rule 16.

## VIII. INACCURATE REPRESENTATION REGARDING RULE 26(f) COMMUNICATION

In Plaintiff's Motion for Extension of Time to File the Rule 26(f) Report, Plaintiff represented that Defendant "did not respond" to outreach regarding a Rule 26(f) conference. That representation is inaccurate.

Defendant responded promptly to Plaintiff's email, as reflected in the timestamped correspondence attached as Exhibit B. Defendant objects to the mischaracterization of his responsiveness and notes that this inaccuracy mirrors other exaggerations and misstatements in Plaintiff's draft discovery plan, including inflated article counts and conflation of third-party comments with Defendant's own speech.

## IX. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

1. Reject Plaintiff's draft Rule 26(f) discovery plan;

2. Stay discovery pending resolution of Defendant's Motion to Dismiss for lack of personal jurisdiction;

3. In the alternative, limit any discovery strictly to jurisdictional issues;

4. Preserve Defendant's rights under Rules 26(b)(1), 26(c), and the First and Fourteenth Amendments; and

5. Grant such other relief as the Court deems just and proper.

        Respectfully submitted,
        /s/ Frank Parlato Jr.
        Frank Parlato Jr., Defendant Pro Se
        Appearing Specially
        No Consent to Personal Jurisdiction, Venue, or Service
        29009 Geranium Drive
        Big Pine Key, FL 33043
        305-783-7083
        frankparlato@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2026, I e-mailed a true and correct copy of the foregoing DEFENDANT'S OBJECTION TO PLAINTIFF'S DRAFT RULE 26(f) DISCOVERY PLAN to:

Christopher A. Ambrose
153 Middle Beach Road
Madison, CT 06443

        /s/ Frank Parlato Jr.
        Frank Parlato Jr.

## Plaintiff's Proposed Rule 26(f) Discovery Plan

Plaintiff Christopher Ambrose and Defendant Frank Parlato, Jr. are self-represented parties to this action pending in the United States District Court for the District of Connecticut. Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiff provides this proposed discovery plan to Defendant to facilitate the parties' meet-and-confer obligations and to promote the just and efficient adjudication of this matter.

### I. Subject Matter Jurisdiction
This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship: Plaintiff is a citizen of Connecticut and Defendant is a citizen of Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs.

### II. Personal Jurisdiction and Venue
Plaintiff contends that this Court has personal jurisdiction over Defendant pursuant to Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b, and the Due Process Clause of the United States Constitution. Defendant has intentionally directed tortious conduct at a Connecticut resident, caused foreseeable harm within the State of Connecticut, and purposefully availed himself of the privilege of conducting activities within this forum. Plaintiff's claims arise directly out of Defendant's forum-directed conduct.

Defendant has indicated that he contests personal jurisdiction.

**Venue** is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims—including the harm to Plaintiff's reputation and emotional distress—occurred in this district.

### III. Summary of Claims and Relief Sought
Plaintiff asserts claims for defamation, defamation *per se*, false light invasion of privacy, public disclosure of private facts, intentional infliction of emotional distress, and harassment. These claims arise from Defendant's systematic publication and dissemination of false and defamatory statements concerning the Plaintiff to a global audience. Notably, Defendant's publications include the false and malicious assertions that Plaintiff is a child sexual predator and has committed other crimes of moral turpitude. These statements were specifically calculated to target the Plaintiff's community in Connecticut. Because these statements falsely impute the commission of crimes punishable by incarceration, they constitute defamation *per se* under Connecticut law.

Plaintiff seeks: compensatory damages for significant reputational, emotional, and other harm; punitive damages as permitted by law; permanent injunctive relief to compel the removal of the defamatory content; declaratory relief; and the recovery of costs and interest.

### V. Undisputed Facts.
At this stage of the litigation, Plaintiff asserts the following material facts are undisputed:

- **Publication and Control:** Defendant is the publisher and editor of the website *frankreport.com* and is responsible for the publication of all articles identified in the Amended Complaint.

- **Lack of First-Hand Knowledge:** Plaintiff and Defendant have never met in person, spoken directly, or had any personal or professional interaction.

- **Initial "Introduction":** Defendant's awareness of Plaintiff and the "facts" asserted in his publications were initially derived from communications with Plaintiff's ex-wife, Karen Riordan.

- **Relationship and Conflict of Interest:** On November 9, 2021, Riordan stated to law enforcement officials that she was in an "intimate" relationship with Defendant and began residing at his Florida residence in approximately September 2021.

- **Temporal Connection to Publication:** Defendant published his first article concerning the Plaintiff on October 2, 2021—very shortly after the aforementioned co-habitation began. Since that date, Defendant has published hundreds of additional articles regarding Plaintiff.

### V. Case Management Plan

#### A. Initial Disclosures
Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) will be exchanged by the parties on or before **March 2, 2026**.

#### B. Scheduling Conference
Pursuant to Fed. R. Civ. P. 16(b), the parties request a scheduling conference with the Court before the entry of a scheduling order. Given the anticipated complexities of discovery and Defendant's indicated challenges to jurisdiction, the parties believe a conference would facilitate the orderly management of this action. The parties are amenable to the conference being conducted via telephone or video at the Court's convenience.

#### C. Early Settlement Conference

*Awaiting Defendant's response: TBD.*

### VI. Discovery
#### A. Scope of Discovery and Needs of the Case
The parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1).

**Plaintiff's Position:** Discovery is necessary regarding the following categories:

1. **State of Mind and Malice:** Defendant's motivation, intent, and state of mind, including all communications with Karen Riordan and other identified individuals concerning Plaintiff, as well as all evidence relevant to actual malice or reckless disregard for the truth, any personal animus, or relational or financial incentives underlying the publications.

2. **Editorial Process:** Defendant's fact-checking, editorial, and publication practices, including efforts to verify accuracy (if any), reliance on biased or discredited sources or disregard of known facts, and solicitation and consultation of sources.

3. **Third-Party Communications:** Communications with primary and secondary sources, contributors, and third parties involved in supplying information, documents (including court-sealed or otherwise confidential materials), and media (audios, videos and photos) used in the publications, or encouraging or amplifying the publications.

4. **Coordinated Dissemination:** Communications with third parties—including contributors, social media "amplifiers," or other associates—regarding the coordination of published material, reader comments or social media engagement related to Plaintiff.

5. **Business Model and "Alter Ego" Evidence:** Defendant's business and financial arrangements relevant to motive and malice, including any compensated publication or transactional or personal benefits influencing editorial decisions, and Defendant's records reflecting the commingling of personal and business funds, and payments received from any "sponsors" or third parties linked to the timing of the publications.

6. **Website Analytics and Source Authenticity:** Discovery is required regarding website traffic, engagement data, and administrative logs to determine the reach of the defamatory statements and the authenticity of user interactions. This includes:

- **Dissemination and Traffic Metrics:** A technical deep-dive into website traffic, analytics, and user-engagement data for all URLs identified in the Amended Complaint. This includes page views, unique visitors, session data (including duration), referral sources, and time-on-page metrics to quantify the extent of the statements' exposure.

- **Comment Authenticity and Origin:** All internal administrative data associated with the creation and posting of reader comments. This includes assigned IP addresses, device identifiers (MAC addresses), and browser fingerprints to verify the unique origin of user-generated content and identify potential "sock-puppet" activity.

- **User Account and Persona Verification:** Data sufficient to identify whether reader comments originated from distinct, unique users or from a limited number of sources or

accounts. This includes internal logs reflecting the creation, management, or use of multiple personas from a single administrative or user account.

- **Administrative and CMS Logs:** Full access to metadata and backend data from the Content Management System (CMS) used by the "frankreport.com" This includes tracking timestamps and author-account IDs for both primary articles and subsequent user-generated content to determine if the Defendant is the actual source of the "reader" engagement he claims.

7. **Damages and Monetization:** Discovery is required regarding all revenue streams associated with the defamatory publications—including advertising, subscriptions, fees for publication (as described by the US Attorneys Office), and donations—to quantify the Defendant's enrichment and the reach of the content. This includes financial records reflecting the flow of funds from these sources to Defendant's personal accounts or entities under his *de facto* control. Such information is essential to (1) establish Defendant's financial motive for the conduct, (2) assess the appropriateness of punitive damages relative to his financial condition, and (3) determine if Defendant exercised such exclusive control over associated entities that additional liability is warranted.

## B. Discovery Period

All discovery will be commenced by **March 2, 2026** and completed (not propounded) by **September 15, 2026.**

## C. Phased Discovery

To promote efficiency and proportionality, discovery shall proceed in the following sequential phases:

- **Phase 1:** Initial disclosures and written discovery (interrogatories and document production) regarding core liability issues.

- **Phase 2:** Depositions of fact witnesses following substantial completion of document production.

- **Phase 3:** Expert discovery, including technical and damages experts, following the completion of core fact discovery.

## VII. Depositions

Plaintiff anticipates the need for 8–10 depositions of fact witnesses. Plaintiff reserves the right to identify additional deponents as they become known through discovery. Depositions will be completed by **September 15, 2026**.

## VIII. Interrogatories

Plaintiff proposes a limit of twenty-five (25) interrogatories, including discrete subparts, and reserves the right to seek leave for additional interrogatories for good cause shown.

### IX. Experts
The parties will designate all trial experts and provide reports pursuant to Fed. R. Civ. P. 26(a)(2) as follows:

1. **Plaintiff's Expert Disclosures:** On or before **May 2, 2026.**

2. **Defendant's Expert Disclosures:** On or before **June 2, 2026.**

3. **Expert Depositions:** To be completed by **September 15, 2026.**

**Plaintiff's Qualification**: Pursuant to the Phased Discovery plan outlined in Section VI(C), Plaintiff's expert disclosure deadline of May 2 is contingent upon the substantial completion of Phase 1 (Document Production). Because the expert analysis requires the technical data identified in Section VI(A)(6), Plaintiff reserves the right to seek an extension of these deadlines if Defendant fails to provide the necessary data in a timely manner.

### X. Electronically Stored Information (ESI)
The parties have conferred regarding a simplified ESI protocol. Each party will preserve and produce relevant emails, text messages, and social media content in searchable PDF format or native format (e.g., .xlsx for spreadsheets). The parties do not anticipate the need for forensic imaging at this time. This agreement does not preclude later requests for specific metadata or native files should the searchable PDFs prove insufficient for verification.

### XI. Non-Electronic Documents
The parties agree to preserve all relevant paper documents and tangible items. To promote efficiency and reduce the risk of loss, the parties will produce such documents in searchable, scanned PDF format via electronic delivery whenever possible. If scanning is not feasible, the producing party shall provide clear, legible copies. Each party shall bear its own costs of production unless the request is found to be disproportionately burdensome, in which case the parties will meet and confer to discuss cost-sharing or inspection alternatives.

### XII. Privilege and Clawback (Rule 502(d))
Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work-product protected documents shall not constitute a waiver of privilege in this or any other federal or state proceeding. A party discovering an inadvertent production must promptly notify the receiving party, who must immediately return, sequester, or destroy the information and all copies until the claim is resolved by the Court.

### XIII. Third-Party Discovery
Plaintiff anticipates the need for significant third-party discovery, including subpoenas directed to: web-hosting providers, analytics platforms, payment processors, financial institutions, and relevant government entities as well as private individuals. Third-party discovery shall proceed concurrently with fact discovery and conclude by the discovery cutoff.

### XIV. Summary Judgment and Trial Readiness

To ensure an orderly progression of the case, the parties propose the following deadlines:

1. **Summary Judgment Motions:** Filed on or before **October 15, 2026**.

2. **Trial Readiness:** The case will be ready for trial by **November 30, 2026**.

3. **Joint Trial Memorandum:** Filed on or before **November 1, 2026** or as otherwise ordered by the Court.

### XV. Conclusion

The parties submit this proposed Rule 26(f) discovery plan in good faith to promote the just, speedy, and inexpensive determination of this action.

1/21/26, 3:59 PM  Case 3:25-cv-01151-SVN   Gmail - Rule 26 Report – Request for Consent to Extension
Document 49    Filed 01/22/26    Page 12 of 12

Exhibit B

 Gmail                          Frank Parlato <frankparlato@gmail.com>

# Rule 26 Report – Request for Consent to Extension

**Frank Parlato** <frankparlato@gmail.com>                   Sat, Dec 27, 2025 at 5:43 PM
To: "ca0515@aol.com" <ca0515@aol.com>

Dear Mr. Ambrose,

I consent to a thirty (30) day extension of the deadline to file the Rule 26(f) report.

My consent is procedural only. It does not waive any objections to personal jurisdiction, venue, service of process, or discovery, and it does not affect my pending Motion to Dismiss or Motion for Sanctions. I continue to maintain that discovery should be stayed pending resolution of those motions.

Please include this limitation verbatim in any motion you file seeking the extension.

Regards,
Frank Parlato, Jr.

On Sat, Dec 27, 2025 at 1:09 PM ca0515@aol.com <ca0515@aol.com> wrote:

> As you know, the Court ordered the Rule 26(f) Report by December 31. Since that order, you filed a Motion for Sanctions on December 16 (ECF No. 32) with extensive exhibits and a 29-page reply in support of your Motion to Dismiss on December 23 (ECF No. 34).
>
> In light of these filings, I intend to seek a thirty (30) day extension of the deadline to file the Rule 26 Report.
>
> Please let me know by **Monday December 29 at 3 PM** whether you consent to this request.