**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTOPHER A. AMBROSE, *Plaintiff*, | ) | 3:25-CV-01151 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK ROBERT PARLATO, JR., *Defendant*. | ) | September 30, 2026 |

**RULING ON MOTION TO DISMISS, MOTION FOR SANCTIONS, AND MOTION TO STAY**

Sarala V. Nagala, United States District Judge.

Plaintiff Christopher Ambrose brings this action *pro se*[1] against Defendant Frank A. Parlato, also proceeding *pro se*. Plaintiff alleges that Defendant, who operates a website, published "published hundreds of articles falsely accusing Ambrose of heinous acts, including child sexual abuse, theft, conspiracy, and bribery of public authorities, including family court judges." ECF No. 13 ¶ 8. Plaintiff alleges that Defendant's articles have subjected Plaintiff to public ridicule, death threats, threats of mutilation, widespread reputational and other harm, which have "utterly destroyed [his] qualify of life." *Id.* ¶ 11. Plaintiff brings six state law counts against Defendant: (1) false light invasion of privacy; (2) public disclosure of private facts; (3) defamation *per se*; (4) defamation; (5) intentional infliction of emotional distress ("IIED"); and (6) criminal harassment in violation of Conn. Gen. Stat. § 53a-183(a).

Three motions are currently pending before the Court. First, Defendant has moved to dismiss Plaintiff's complaint for lack of personal jurisdiction and failure to state a claim. Mot. to

[1] As the Court noted in another of Plaintiff's cases, Plaintiff is not afforded the special solicitude ordinarily granted to *pro se* litigants, given that he graduated law school and passed the bar, although he allowed his law license to lapse. *See Ambrose v. Lee*, No. 3:25-CV-398 (SVN), 2026 WL 884031, at *3–4 (D. Conn. Mar. 31, 2026). Defendant, however, is. *See Fowles v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Dismiss, ECF No. 24; Revised Reply Br., ECF No. 43.[2] Second, Defendant has filed a motion for sanctions, focused on Plaintiff's conduct in another case and issues involving service of process. Mot. for Sanctions, ECF No. 32. Finally, Defendant filed a motion to stay discovery pending resolution of personal jurisdiction issues. Mot. to Stay, ECF No. 47.

For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss for with respect to Counts Three and Four, alleging defamation *per se* and defamation, and Count Six, alleging harassment, but denies it with respect to Counts One, Two, and Five. The Court DENIES the motion to stay discovery as moot and, finally, DENIES Defendant's motion for sanctions.

## I. FACTUAL BACKGROUND

The 109-page amended complaint spends considerable time detailing conflicts between the Plaintiff and his ex-wife, the specifics of which are only somewhat relevant to his allegations about Defendant. The Court recounts this material only briefly and focuses here on material connected with Defendant and the pending motions. While considering a motion to dismiss the Court treats the factual allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court notes that Defendant's revised reply brief far exceeds the ten-page limitation for reply briefs set forth in the Local Rules. *See* D. Conn. L. Civ. R. 7(d). Although the Court offers Defendant special solicitude as a *pro se* litigant—including with respect to procedural rules, *see Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010)—both parties shall carefully review the Local Rules and ensure full compliance going forward. The Court will not consider new arguments raised by Defendant for the first time in his reply briefs, such as his argument that Section 230 of the Communications Decency Act bars Plaintiff's claims. *See* ECF No. 43 at 4, 8, 15, 27; *Ernst Hass Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply brief"). While Defendant made a fleeting reference to Section 230 in his opening brief, *see* ECF No. 24 at 10, this reference, absent any accompanying argument, is insufficient to have given Plaintiff notice that Defendant was raising a Section 230 defense. Defendant is free to raise this defense, and any others, at a later stage of the case.

A. Plaintiff's Divorce and Custody Battle

Plaintiff Christopher Ambrose, an individual residing in Connecticut, brings this suit against Frank Parlato, Jr., an individual domiciled in Florida. ECF No. 13 ¶¶ 2–3; Parlato Decl., ECF No. 24-1 ¶ 2. Ambrose had filed for divorce in July 2019 after several years of worsening relations with his then-spouse Karen Riordan. After filing for divorce, Riordan began making allegations that Ambrose had mistreated their children, even sexually abusing them. ECF No. 13 ¶ 36. Connecticut courts appointed a guardian *ad litem*, paid for out of marital assets. *Id.* ¶ 37. On April 26, 2022, Plaintiff was awarded sole custody, and Riordan was permitted supervised visitation "contingent upon a complete psychiatric examination and court-supervised treatment." *Id.* ¶¶ 84–85. Plaintiff's account describes Riordan as attempting to get the children to falsely report him for mistreating them, and Connecticut courts frequently trying to restrain her. *See, e.g., id.* ¶¶ 42, 44, 49, 51, 55, 88. In September 2021—while the divorce trial was going on remotely in Connecticut—Riordan moved to Big Pine, Florida to live with Defendant. *Id.* ¶ 70. A few weeks later Defendant began to publish articles attacking the Plaintiff on his news website, FrankReport.com. *Id.* ¶ 74.

Plaintiff's complaint comes in the wake of his state court divorce and custody cases. Plaintiff frequently references, but does not attach, the Connecticut Superior Court's custody decision, *Ambrose v. Ambrose*, No. FBT-FA-19-6088163-S, 2022 WL 21749185 (Conn. Super. Ct. Apr. 26, 2022).[3] This opinion states that "none of the allegations concerning the mistreatment of the three minor children have been substantiated. Despite investigations by DCF, Yale-New Haven Hospital, Connecticut Children's Hospital and work done by individuals . . . none of the

[3] The Court may take judicial notice of matters of public record, including rulings from other courts. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

allegations could be proven." *Ambrose*, 2022 WL 21749185, at *9. The court also noted that there were several "determinations of coaching" of Plaintiff's children as to the answers they provided, specifically as to the allegations of sexual abuse. *Id.*

B. Defendant's Website and Publications[4]

According to the amended complaint, Defendant professes to be an "investigative journalist" and runs several websites, including frankreport.com, artvoice.com, and the niagrafallsreporter.com. ECF No. 13 ¶¶ 75, 147. Beyond these websites, Defendant also promotes and disseminates his articles and content through social media platforms including Instagram, X, Facebook, and YouTube. *Id.* ¶ 148. In addition to publishing his own material, Defendant allegedly publishes content by Richard Luthmann and Dr. Bandy Lee, which also attack Plaintiff, and hyperlinks to the articles of others. *Id.* ¶¶ 151–152. Defendant's publications convey to readers that Plaintiff has sexually abused, isolated and mistreated his children; denied Riordan and her family access to them; stole or hid marital assets; harbors fetishes, including for child pornography; and is a dangerous, violent psychopath. *Id.* ¶ 154. Further, Defendant suggests that the Plaintiff bribed, and is part of a conspiracy with, law enforcement, Department of Child and Family investigators, family court judges, and other professionals in order to obtain favorable custodial and financial rulings. *Id.*

Plaintiff details more than 300 articles that Defendant has published either under his own name, or under what Plaintiff believes to be pen names, attacking Plaintiff. *Id.* ¶¶ 147, 162–462.

[4] Inexplicably, Plaintiff's amended complaint contains paragraphs numbered 1 through 159 on pages 1 through 37, and then begins page 38 with restarting paragraph numbering at 147, resulting in there being two paragraphs for each paragraph numbered 147 through 159. The citations in this section of the ruling refer to the section of the complaint beginning at page 38.

This suit addresses the statements published after July 20, 2023. *Id.*[5] These articles appeared regularly between July 20, 2023, and March 30, 2024, though Plaintiff has also included three articles from August 2025, after this case was filed. *Id.* ¶¶ 420–462. The accusations in these articles are numerous and severe. They can be grouped into three categories: (1) statements made by Defendant through his real name or, as Plaintiff alleges, Defendant's pen names, including "Jessica Clark" and "Jeanine Morrison," *see id.* ¶¶ 248, 363, 392; (2) Defendant's republication of statements made by others; and (3) readers' comments on articles published on Defendant's website. The allegations are voluminous, and the Court highlights only a few as examples here.

With respect to statements Defendant makes directly, Defendant claims, for instance, that Plaintiff "wants his three teenagers arrested" and returned to him, *id.* ¶¶ 162–65, 176–78; sexually abused his children, *id.* ¶¶ 167–74, 181–84, 204–205; was Riordan's "violent abuser," *id.* ¶ 229, held his children "in captivity," *id.* ¶ 269, and is a "psychopath," *id.* ¶¶ 277–81, 286. Defendant also stated that Plaintiff "took all. . . marital funds and Riordan's inheritance," and that a family court judge based her decision on a custody evaluation paid for by Plaintiff—the implication being the decision was corrupt. *Id.* ¶¶ 222, 237, 415. Another article claims that an investigator "founds hundreds of photos of young boys and men having sex" on Plaintiff's computer, but Plaintiff successfully obtained a court order to bar an evaluator from reviewing his computer. *Id.* ¶ 241. In an August 2025 publication, according to Plaintiff, Defendant "fabricated a false and defamatory narrative of [Plaintiff's] financial status" and published photographs of Plaintiff's

[5] Plaintiff alleges that he is pursuing allegedly defamatory statements Defendant made after July 20, 2023, which are "within the applicable statute of limitations." ECF No. 13 ¶ 8. Plaintiff is correct that there is a two-year statute of limitations for libel and slander claims in Connecticut. *See* Conn. Gen. Stat. § 52-597. As discussed below, however, none of Plaintiff's claims for defamation survive the motion to dismiss. Plaintiff's remaining tort claims are subject to a three-year statute of limitations under Connecticut law. *See* Conn. Gen. Stat. § 52-577.

residence. *Id.* ¶¶ 437–49. Plaintiff alleges Defendant also hyperlinks to articles Defendant previously wrote, to further defame Plaintiff. *Id.* ¶¶ 258–66, 404–12.

Defendant also repeats statements from Dr. Bandy Lee,[6] whom Defendant identified as "one of the premier psychiatrists in custody and divorce cases." *Id.* ¶ 185. For instance, Plaintiff alleges that Defendant "published and promoted" Lee's statements against Plaintiff and included a hyperlink to confidential psychiatric notes and reports Lee wrote about Plaintiff. *See, e.g.*, *id.* ¶¶ 186–95, 198–202, 210–211, 226–27, 314–26, 347–53. Defendant also quoted Lee as having heard a recording of the Plaintiff threatening to rape his daughter for engaging in minor misbehavior. *Id.* ¶ 290.

Parlato also published and hyperlinked to work written by Luthmann. *See, e.g.*, *id.* ¶¶ 215–19, 251–57, 357–59, 385–87, 399–402. For instance, Defendant published an article by Luthman which calls Plaintiff a "Psychopath, Pedophile CT Father." *Id.* ¶ 251. Finally, Plaintiff alleges that Defendant published an article in August of 2025 authored by Margaret Sullivan, an associate of Riordan, defaming him. *Id.* ¶¶ 452–61.

Following each article was a comment section, which was full of vitriol towards the Plaintiff. The comments could become so threatening that Defendant told his readers "[Plaintiff] has been getting hate comments and other threats which I am not publishing. We do not wish or condone him coming to harm." *Id.* ¶ 158; *see also id.* ¶ 157 (describing a sampling of the comments). As a result of this conduct Plaintiff alleges he "suffered significant and ongoing emotional distress, reputational damage, and other personal harm." *Id.* ¶ 161.

[6] Plaintiff has sued Dr. Lee in a case pending before the undersigned. *See Ambrose v. Lee*, D. Conn. No. 3:26-CV-667 (SVN) ("*Lee II*"). The Court dismissed Plaintiff's earlier suit against Dr. Lee, based on Plaintiff's misrepresentations that he was entitled to proceed in that action *in forma pauperis*. Order, *Ambrose v. Lee*, D. Conn. No. 3:25-CV-398 (SVN) ("*Lee I*"), ECF No. 55.

## II. MOTION TO DISMISS

Defendant has moved to dismiss for lack of personal jurisdiction and failure to state a claim. The Court dismisses Plaintiff's defamation claims in Counts Three and Four for lack of personal jurisdiction and dismisses Count Six for failure to state a claim.[7] Counts One, Two, and Five survive dismissal.

### A. Personal Jurisdiction

First, Defendant contends that the Court lacks personal jurisdiction over him. ECF No. 24 at 4–5. The Court agrees with Defendant that it cannot exercise personal jurisdiction over Plaintiff's defamation claims under Connecticut's long-arm statute, but disagrees with respect to the Plaintiff's other counts. The due process analysis favors Plaintiff with respect to Counts One, Two and Five, and thus the Court has personal jurisdiction over Defendant with respect to those counts. The Court addresses Count Six separately.

#### *1. Legal Standard*

On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of a *prima facie* showing that personal jurisdiction exists over the defendant. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (where neither party seeks to conduct discovery or requested an evidentiary hearing on matters of jurisdiction, the plaintiff need only make *a prima*

[7] Defendant also contends that the remedies that Plaintiff seeks are extraordinary and unconstitutional. ECF No. 24 at 10–11. The Court does not need to determine the adequacy of Plaintiff's legal remedies at the motion to dismiss stage, and declines to do so here. *See IM Partners v. Debit Direct Ltd.,* 394 F. Supp. 2d 503, 519 (D. Conn. 2005) ("the adequacy of the plaintiffs' legal remedies cannot be determined at the motion to dismiss stage of litigation"); *Guerriero v. BB OPCO, LLC*, No. 24-CV-8778 (PKC), 2026 WL 878716, at *9 (S.D.N.Y. Mar. 30, 2026) ("A motion to dismiss, however, ordinarily is not the juncture for a Court to decide the possible range of remedies should a claim be proven.").

*facie* showing of personal jurisdiction). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir.), *certified question accepted,* 15 N.Y.3d 744, 933 N.E.2d 205 (2010), and *certified question answered,* 16 N.Y.3d 295, 946 N.E.2d 159 (2011), (internal quotation marks, citation, and subsequent history omitted; alteration in original).

Evaluating whether a federal court has personal jurisdiction over a non-resident defendant is a two-step inquiry. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007). First, (1) state law must authorize personal jurisdiction; and (2) the exercise of jurisdiction must comport with constitutional due process principles. *Chloe*, 616 F.3d at 163–64. "The first inquiry must be whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if [the court] find[s] the statute to be applicable do[es it] reach the question whether it would offend due process to assert jurisdiction." *W. World Media, LLC v. Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30 (D. Conn. 2011) (quoting *Lombard Bros. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983)) (alterations omitted).

As part of the due process inquiry, the Court analyzes whether general or specific jurisdiction is asserted over the defendant. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). Because general jurisdiction typically exists for an individual in the individual's domicile—which, for Defendant here is Florida—Plaintiff can assert only that the Court has specific jurisdiction over Defendant. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). And when a plaintiff asserts specific personal jurisdiction, "they must make that showing 'with respect to each claim asserted.'" *Sullivan v. UBS AG*, 149 F.4th 206,

217 (2d Cir. 2025) (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018)); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Some claims may survive this analysis while others do not; specific personal jurisdiction is not necessarily all or nothing.

Importantly, however, the plaintiff may not rely on "conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Finally, while the Court construes all pleadings and affidavits in the light most favorable to the plaintiff, it must not "draw argumentative inferences in the plaintiff's favor." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

*2. Long-Arm Statute*

Connecticut's long-arm statute provides for personal jurisdiction over a nonresident individual who, in relevant part: "(1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52-

59b(a)(1)–(3). Defendant misstates the provisions of the statute, entirely omitting § 52-59b(a)(3), where tortious acts committed outside the state, but causing injury within the state, suffices except for defamation claims, if other criteria are met. ECF No. 24 at 4. As to the provisions he does mention, Defendant argues that none of these apply to him, so there is no personal jurisdiction. *Id.* at 4. However, other than this spartan assertion, Defendant offers no further argument on this point. *Id*.

The Court begins with subsection (1), which "provides jurisdiction over certain out-of-state defendants who '[t]ransact[] any business within the state." *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 n.4 (2d Cir. 2017). If Plaintiff has made a *prima facie* showing that Defendant has transacted any business within the state of Connecticut under subsection (1), the Court would have jurisdiction over Plaintiff's defamation claims regardless of subsections (2) and (3), and need not go further. But it concludes that he has not.

The phrase "transacts any business within the state" is construed "quite broadly" by the Supreme Court of Connecticut. *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 560 (D. Conn. 2010) (citing *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)). Indeed, "[t]he phrase can embrace as little as "a single purposeful business transaction." *Zartolas*, 184 Conn. at 474. But in addition to alleging that a defendant transacted business with the state, the complaint must also demonstrate that the plaintiff's cause of action arises "from the defendant's transaction of business within [Connecticut]." *Simonson v. Olejniczak*, No. 22-1219, 2023 WL 2941521, at *2 (2d Cir. Apr. 14, 2023) (summary order) (citing *Zartolas*, 184 Conn. at 477); *Statek Corp. v. Coudert Bros*. LLP, No. 3:07-CV-456 (SRU), 2018 WL 834227, at *15 (D. Conn. Feb. 12, 2018) ("section 52-59b(a)(1)'s second requirement" is that plaintiff's cause of action against the defendant arose from the defendant's business activity in Connecticut) (citing *Ryan v. Cerullo*,

282 Conn. 109, 121–122 (2007)). And despite that the statute is interpreted broadly, "[t]here must be some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the subject activity within the forum state and that, subsequently, invokes the benefits and protections of its laws." *Walshon v. Ballon Stoll Bader & Nadler*, P.C., 121 Conn. App. 366, 372 (2010).

The Court first notes that the amended complaint is devoid of allegations that Defendant transacted any business in Connecticut. Defendant wrote about the state, but there is no indication that he ever visited it or otherwise transacted business here. ECF No. 13 ¶ 19. According to the complaint, Plaintiff's ex-wife went to Florida to live with Defendant. *Id.* ¶¶ 70, 74. And Plaintiff alleges Defendant was under home confinement in his Florida residence. *Id.* ¶ 138. Nothing from these allegations indicates he was transacting business within Connecticut. Thus, subsection (1) does not provide personal jurisdiction over Defendant.

The Court thus turns to subsections (2) and (3) of the long-arm statute, which permit the exercise of personal jurisdiction when the defendant has engaged in certain tortious conduct. But these subsections explicitly exempt claims for defamation, *see* Conn. Gen. Stat. § 52-59b(a)(2) & (3), and Plaintiff is aware his defamation claims in Counts Three and Four would not fall under these subsections. *See* ECF No. 31 at 21 ("Even if the Court found otherwise (it should not), § 52-59b(a)(2) independently confers jurisdiction over the non-defamation torts because Defendant committed tortious acts 'within the state' by directing targeted online communications here. The non-defamation claims—false light, public disclosure of private facts, and intentional infliction of emotional distress—fall squarely under (a)(2)."); *see also id.* at 25 (focusing on whether § 52-59b(a)(2) & (3) apply to the non-defamation claims). Accordingly, the Court holds that Plaintiff has failed to meet his burden of a *prima facie* showing of personal jurisdiction over Defendant

with respect to Counts Three and Four, alleging defamation *per se* and defamation, and these Counts must be dismissed on this basis.

But Counts One, Two, and Five alleging false light invasion of privacy, public disclosure of private facts, and IIED, respectively, fare better. These Counts are torts, and it is alleged "Defendant deliberately and maliciously targeted Plaintiff in Connecticut." ECF No. 13 ¶ 6. Conn. Gen. Stat. § 52-59b(a)(2) & (3) generally permit personal jurisdiction for tortious conduct committed either within the state or outside of the state, that injures persons within the state.

The Court finds that § 52-59b(a)(2)—concerning tortious actions within the state—is satisfied here. "Connecticut courts have held that § 52-59b(a)(2) is satisfied when a nonresident commits a tortious act within the state by sending a tortious communication into the state." *Doe v. Colli*, 611 F. Supp. 2d 216, 221 (D. Conn. 2009). In *Doe*, the court recognized that the Connecticut Superior Court had recently confronted the issue—then, one of first impression—of whether an "internet posting that is generally accessible from anywhere in the world could provide the basis for personal jurisdiction over a non-resident defendant who created the posting." *Id.* at 222 (citing *Rios v. Fergusan*, No. FA-084039853-S, 51 Conn. Supp. 212 (Conn. Super. Ct. Dec. 3, 2008)). *Doe* endorsed *Rios*'s view that where the video at issue is "more than the mere posting of a message upon an open internet forum," but was instead "specifically targeted" at the Connecticut resident—in *Rios*, by threatening the life and safety of a Connecticut resident—there has been tortious conduct within the state. *Id.* at 222–23. In addition, the Connecticut Supreme Court, interpreting the state's corporate long-arm statute has held, "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut." *Knipple v. Viking Commc'ns, Ltd.*, 236 Conn. 602, 610 (1996).

Here, it is clear Defendant's alleged publications, of which Plaintiff claims there are more than three hundred, specifically targeted Plaintiff, a Connecticut resident. Indeed, the language of some of the articles quoted indicates their focus on Connecticut. For instance, in August 17, 2023, Defendant published an article on his website by Richard Luthmann which stated, "[T]he Ambrose children are at risk from their psychopath predator father ... Ambrose may bring the children back to his den of iniquity in Madison, Connecticut, where underage drinking, drugs use, and sex (statutory rape) regularly occurs." *Id.* ¶ 252 (emphasis removed). Defendant also published numerous photos of the Plaintiff's residence in Connecticut, including providing his readers with a map to it. *Id.* ¶ 449. And Plaintiff's injuries would be felt most acutely in his state of residence. *See id.* ¶ 2 (noting Plaintiff is domiciled in Connecticut). Finally, to the extent that *Rios* relied on threats to physical safety against the Connecticut resident, Plaintiff has alleged that, in response to Defendant's articles, commenters have threatened Plaintiff's safety. *See, e.g.*, *id.* ¶ 157 ("CHRIS, YOU BETTER SLEEP WITH ONE EYE OPEN . . . Why don't you . . . die."; "As a mother I only wish I could take you to the woods. Only one of us would come out and it sure as fuck wouldn't be you."). While these remarks were not made by Defendant himself, Plaintiff's theory is that Defendant's articles laden with false accusations against Plaintiff goaded on commentators who, in turn, appeared to threaten Plaintiff's safety. Defendant himself admitted that Plaintiff had been "getting hate comments and other threats" which Defendant refrained from publishing. *Id.* ¶ 158.

Thus, long-arm jurisdiction is satisfied as to Counts One, Two, and Five under § 52-59b(a)(2) because Defendant's conduct is considered tortious conduct within Connecticut, and the Court need not reach the question of whether it would be satisfied under § 52-59b(a)(3).

*3. Due Process*

Next, the Court concludes that exercising personal jurisdiction over Defendant with respect to Plaintiff's non-defamation causes of action would be consistent with due process.

The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283. The nonresident defendant generally must have "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The due process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164.

To satisfy the minimum contacts inquiry, a plaintiff must show that the court has either general or specific jurisdiction over the defendant. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). As discussed above, general jurisdiction does not apply here because Defendant is domiciled in Florida. *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). "The exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016), *mandate recalled by Waldman v. Palestine Liberation Org.*, 171 F.4th 575 (2d Cir. 2026) (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 923 (emphasis in original)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.

The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (collecting cases). A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"; "these same principles apply when intentional torts are involved." *Id.* at 286 (cleaned up). Thus, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

In this Circuit, "where 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff,'" courts employ "an 'effects test,' by which 'the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.'" *Tarsavage v. Citic Tr. Co.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014) (cleaned up and quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013)); *see also Calder v. Jones*, 465 U.S. 783, 788–789 (1984).

The amended complaint sufficiently alleges that Defendant expressly directed his conduct into Connecticut, such that the exercise of specific personal jurisdiction over him comports with due process. In *Calder*, the Supreme Court held that California could assert personal jurisdiction that comported with due process over two Florida-domiciled journalists who published in print an allegedly libelous article against a California plaintiff in a newspaper whose largest readership was based in California. *Id.* at 788–790 (1984). Both journalists wrote the story outside of California, "relying on phone calls to sources in California," for the article. *Id.* at 785. The Supreme Court held that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790.

Applying *Calder*, courts in this district have similarly found that online posts targeted at a plaintiff who lives in Connecticut were sufficient to establish specific personal jurisdiction over the defendant where the defendant knew the plaintiff was a Connecticut resident and the plaintiff's life was "centered in Connecticut and the brunt of the harm was felt . . . in Connecticut." *Doe*, 611 F. Supp. 2d at 223 (citing *Calder*, 465 U.S. at 788–90); *Sanchez v. Leonard*, No. 3:24-CV-1434 (SFR), 2025 WL 3229809, at *4 (D. Conn. May 1, 2025), *report and recommendation adopted* (Oct. 6, 2025); *Imbruce v. Buhl*, No. 3:15-CV-554 (JAM), 2016 WL 2733097, at *6–7 (D. Conn. May 10, 2016). In *Rios*, the Connecticut Superior Court found that the threatening YouTube video posted from out of state and directed at Connecticut resident provided the minimum contacts with the state needed for jurisdiction. 51 Conn. Supp. at 225. The court explained that, "[t]hough there is no allegation that [plaintiff] ever stepped foot in Connecticut, the court can exercise personal jurisdiction over him without violating the principles of due process . . . He posted the video on an Internet medium that can be disseminated world-wide, but the content of the video establishes that he was purposefully directing it to the applicant in Connecticut. In this context, his posting of the video constitutes sufficient 'minimum contacts' to justify the exercise of personal jurisdiction over him." *Id*. (citing *Calder*, 465 U.S. at 791).

Here, Defendant was aware that Plaintiff was a resident of Connecticut, and he published multiple articles concerning Connecticut-centered activities that allegedly placed him in a false light and disclosed private facts about him; the brunt of that harm was felt in Connecticut, where Plaintiff resides. For example, Defendant accuses Plaintiff of having a corrupt arrangement with judges in the Connecticut family court system and having "bought custody of the kids for about a million dollars by using his wife's million." ECF No. 13 ¶ 418.

Although Defendant contends that he did not purposefully direct his activities at Connecticut, and that "online journalism accessible everywhere does not create jurisdiction anywhere," ECF No. 24 at 5, the Court disagrees with respect to how Defendant directed his activities. The mere fact that Defendant published online does mean that there can be no jurisdiction in Connecticut.[8] Instead, the Court finds that Plaintiff has sufficiently alleged Defendant has minimum contacts with Connecticut, this is sufficient to justify the exercise of personal jurisdiction.

The Court also concludes that the exercise of personal jurisdiction over Defendant would be constitutionally reasonable here. For reasonableness, the key question is "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164 (internal quotation marks omitted). "Courts are to consider five factors in evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Bank Brussels Lambert v.*

---

[8] Defendant cites *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) for the premise that "online journalism accessible everywhere does not create jurisdiction anywhere." ECF No. 24 at 5. While it is true that publishes of online publications are not subject to specific jurisdiction everywhere simply because the Internet makes them available everywhere, *Biro* is not a particularly apt case for Defendant. The cited section discusses demonstrating actual malice in the case of a limited public figure, and there is little to suggest here that the Plaintiff in the present case should be considered such. Further, the Court in *Biro* dismissed the case because that plaintiff failed to raise an inference of actual malice, rather than on a jurisdictional basis. The Court also notes that Defendant invents a quote from *Biro* in his filings. *See* ECF No. 34 at 8 (citing *Biro* as containing the following quotation: "Online publication accessible in a forum state does not confer personal jurisdiction absent targeted conduct." This type of error is not limited to Defendant, either. Plaintiff also invents material, citing a non-existent case *Alex Jones v. Infowars, Inc.*, with a phantom case number. *See* ECF No. 31 at 11. The Court has separately docketed an order concerning hallucinated citations, ECF No. 53, and further errors of this nature will not be tolerated.

*Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). When a plaintiff has made the threshold showing of minimum contacts at the first step of the due process analysis, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Metropolitan Life Ins. Co.*, 84 F.3d at 568) (internal quotations omitted).

Weighing these factors, the Court finds that exercising personal jurisdiction over Defendant is constitutionally reasonable. With respect to the first factor, it is true that Defendant, who is domiciled in Florida, will face significant burdens in litigating this action in Connecticut. However, the Second Circuit has recognized that, "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because 'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" *Bank Brussels Lambert*, 305 F.3d at 129–30 (quoting *Metropolitan Life Ins. Co.*, 84 F.3d at 574). Thus, this factor favors Defendant, but not heavily.

The second, third, and fourth factors weigh in favor exercising jurisdiction. Connecticut has an interest in adjudicating this action, given that it involves claims related to one of its citizens and is related to an underlying family court proceeding here. Plaintiff has an interest in obtaining convenient relief (though the effectiveness of such relief is neutral, as a Florida court is as capable of affording effective relief as a Connecticut one). And this Court has some familiarity with this action and with Plaintiff's other actions against Bandy Lee and a third defendant he claims defamed him in connection with his divorce and custody proceedings, Tina Swithin. *See Ambrose v. Lee*, No. 3:26-CV-667 (SVN); *Ambrose v. Swithin*, 3:25-CV-01372 (SVN).

As to the fifth factor, Connecticut has an interest in furthering substantive policies that work to safeguard the reputations of its citizens, but this is tempered by the fact that the alleged publications were all written and published out of state, making this element neutral at best.

Weighing all five factors, the Court finds that the exercise of specific personal jurisdiction over Defendant is reasonable. Thus, Defendant's motion to dismiss pursuant to Rule 12(b)(2) is denied with respect to Counts One, Two, and Five.

B. Failure to State a Claim

As discussed above, Counts Three and Four are dismissed for lack of personal jurisdiction. Below, the Court concludes that Plaintiff fails to state a claim as to Count Six, alleging criminal harassment. But Counts One (false light invasion of privacy), Two (public disclosure of private facts) and Five (intentional infliction of emotional distress) survive Defendant's Rule 12(b)(6) challenge.

*1. Legal Standard*

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[9] "A claim has facial plausibility when the plaintiff pleads

[9] Defendant repeatedly argues that Plaintiff is distorting facts by, for example, using ellipses to remove portions of statements and overstating the number of times the word "Connecticut" appears in Defendant's articles by more than thousand percent or engaged in misleading quoting his articles. ECF No. 24 at 6, 7, 9; ECF No. 34 at 16; Revised Reply Br., ECF No. 43 at 9. With respect to Plaintiff's excerpts of the articles, Defendant had the opportunity to place into the record the full articles, and the Court could appropriately consider them. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). And while the Court has not undertaken a word frequency analysis, it appears the articles cited in the amended complaint do often reference Connecticut.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*2. Discussion*

For the reasons discussed below, Defendant's motion to dismiss is denied as to Counts One, Two, and Five, but granted as to Count Six.

a. Count One: False Light Invasion of Privacy

First, the Court concludes that Plaintiff has adequately stated a claim for false light invasion of privacy.

Connecticut has adopted the definition of the false light invasion of privacy tort from the Restatement (Second) of Torts, which recognizes "that liability may be imposed where a

defendant 'gives publicity to a matter concerning another that places the other before the public in a false light ... if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 291 (D. Conn. 2021) (quoting *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 311 (D. Conn. 2000)); *see also Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 131 (1982). Not only must the defendant's statements be false, but "they must be 'such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Chiaravallo*, 561 F. Supp. 3d at 291 (quoting *Jonap v. Silver*, 1 Conn. App. 550, 558 (1984)).

As an initial matter, Plaintiff has alleged that Defendant made statements that would be highly offensive to a reasonable person. Defendant wrote on his website, the FrankReport, that Plaintiff's teenage daughter "was sexually abused and assaulted by her father for three years when she was kept isolated from her mother." ECF No. 13 ¶ 184. Defendant likewise claimed that his website the FrankReport was in possession of photos, video, and audio that supported allegations that Plaintiff had sexually abused his son. *Id.* ¶ 174. Another article suggests Defendant can only be understood by "other abusers." *Id* ¶ 382. These publications accused Plaintiff of sexually abusing his children; there can be little doubt that to be placed in such a false light would be highly offensive to a reasonable person.

Defendant contends that the Plaintiff has not identified a factual basis showing that Defendant knew or recklessly disregarded the falsity of his statements. ECF No. 24 at 8. But

Plaintiff has alleged facts from which Defendant's knowledge and reckless disregard can readily be inferred.

For instance, Plaintiff alleges that Defendant stated a complaint to the Connecticut Attorney General included "scores of audio and videos the children made of their father punishing or abusing them." ECF No. 13 ¶ 387. Plaintiff, in turn, alleges that "[w]hen Parlato published and endorsed these statements, he knew they had been proved false in court." *Id.* The Connecticut Superior Court's custody decision supports Plaintiff's allegations. *See Ambrose*, 2022 WL 21749185, at *9. Plaintiff also maintains Defendant took statements from publicly available court documents that had been dismissed as untrue or misleading by the court and then used these statements in publications to create a misleading impression about the Plaintiff's conduct. *See, e.g.*, *id.* ¶ 388. These allegations suffice to show Defendant's knowledge that his statements would place Plaintiff in a false light. *See Powell v. Jones-Soderman*, 849 F. App'x 274, 278 (2d Cir. 2021) (summary order) (upholding judgment against a defendant for false light invasion of privacy, where the defendant was aware of state court rulings discrediting accounts that the plaintiff had sexually abused his children). But even if Defendant had not read these documents, the scienter required is actual knowledge *or* recklessness, and failure to read such documents before publishing statements about Plaintiff's actions could also be considered reckless.

b. Count Two: Public Disclosure of Private Facts

Next, the Court concludes that Count Two, alleging public disclosure of private facts, is adequately pleaded.

The tort of public disclosure of private facts requires a showing of "public disclosure of any matter that would '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Tarka v. Filipovic*, 45 Conn. App. 46, 53 (1997) (quoting

*Perkins v. Freedom of Information* Comm'n, 228 Conn. 158, 172 (1993); *see also* Restatement (Second) of Torts § 652D (A.L.I. 1977). This tort relates to "publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation." *Tarka*, 45 Conn. App. at 53. Under the Restatement, "there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record." Restatement (Second) of Torts § 652D cmt. b (A.L.I. 1977).

First, the Court notes that Plaintiff cannot advance Count Two on the basis of statements made by Defendant that Plaintiff claims are false, such as the allegations that he sexually abused his children. The tort of public disclosure of private facts covers only facts that are true. *See Tarka*, 45 Conn. App. at 53.

But Plaintiff adequately pleads that Defendant's published articles publicly disclosed private facts about him, as interpreted by the Connecticut Supreme Court. Drawing on the Restatement's commentary, that court has noted: "Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest." *Perkins*, 228 Conn. 158 at 172–73 (quoting *Restatement (Second), Tort*s § 652D cmt. b (1977)). To the extent that the conflicts between Plaintiff and his ex-wife

and children are "family quarrels," and not already subject to public knowledge, they fall under this tort.[10]

In his motion to dismiss, Defendant contends judicial filings and custody records are matters of public concern and that disclosure of them cannot reveal private facts. ECF No. 24 at 9. While Defendant is correct that judicial documents, as a general matter, are publicly available, court filings—particularly in matters that may involve sensitive information, such as family court—are not always public. "Records that are sealed by a court are [an] example of information that is not available to the public." *Soroka v. Household Auto. Fin. Corp.*, No. CV044000300, 2007 WL 1598964, at *6 n.6 (Conn. Super. Ct. Apr. 30, 2007); *see also* Conn. Practice Book, § 25-59A(c) (allowing a judicial authority to seal files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding "if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials"). Here, Defendant is alleged to have published a sealed custody evaluation, which included the Plaintiff's minor children's medical and psychological information. ECF No. 13 ¶¶ 76, 222. This type of information is private even if it is contained in a judicial record. *See McGuirk v. Swiss Re Fin. Services Corp*., No. 14 CIV. 9516 (CM), 2015 WL 13661685, at *1 (S.D.N.Y. Mar. 30, 2015) ("Documents filed under seal are shielded from viewing by the general public. Medical information is among the types of information often made subject to a sealing order."). To be clear, the Court is not holding that this Count Two may proceed merely because the information was sealed, as Plaintiff will

[10] The term quarrels here is not intended to undermine severity of the disagreements and conflicts involved in the family in this case, as the term has not always been confined to minor conflicts. *See, e.g., Morris v. Morris*, 132 Conn. 188, 43 A.2d 463, 465 (Conn. 1945) (where a Court used the term "quarrels" to describe disputes that were "violent and acrimonious" between spouses).

ultimately bear the burden of showing that the sealed custody evaluation contained "private facts" as defined by Connecticut law. Rather, the Court is rejecting Defendant's claim that the fact that it was a judicial record offers a full defense against an otherwise valid claim.

Plaintiff also alleges that Defendant made public other "private facts" which do not stem from court records. For example, Defendant has written about Plaintiff's viewing pornography and child sexual abuse material on Plaintiff's home computer. ECF No. 13 ¶ 266. If the accusation about viewing child sexual abuse material were true, a disclosure about such conduct would not be covered under the tort of public disclosure of private facts. But insofar as the viewing of legal pornography bears a relationship to Defendant's private life, it would be a private fact that Defendant disclosed to the public—the kind of intimate detail of personal and sexual life that that the Restatement protects.

Finding that plaintiff has sufficiently alleged public disclosure of private facts, the Court does not find grounds to dismiss Count Two.

c. Count Five: Intentional Infliction of Emotional Distress

Count Five, alleging intentional infliction of emotional distress, is adequately pleaded.

Under Connecticut law, to prove intentional infliction of emotional distress ("IIED"), the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). The standard for establishing extreme and outrageous conduct is stringent: "[l]iability has been found only where the conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 210–11. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* at 211 (citation omitted).

The Court finds that Plaintiff has adequately pleaded Defendant's conduct was extreme and outrageous. Defendant published accusations that Plaintiff sexually abused his minor children. *See, e.g.*, ECF No. 13 ¶¶ 184, 295, 484. According to the complaint, he did so despite knowing that Connecticut courts had found no merit in these claims. *See* ECF No. 13 ¶¶ 387–388. In Connecticut, false accusations of child sexual abuse may give rise to IIED claims. *See Watts v. Chittenden*, 301 Conn. 575, 577 (2011) (describing trial court judgment for the plaintiff on an intentional infliction of emotional distress claim, where the defendant had falsely accused her former spouse of sexually abusing the couple's children); *Snyder v. Cedar*, No. NNH-CV-010454296, 2006 WL 539130, at *21 (Conn. Super. Ct. Feb. 16, 2006)( "Branding an innocent person as a child molester is extreme and outrageous."). While Defendant maintains that "[r]eporting on litigation and public matters—even harshly—is not extreme or outrageous as a matter of law," ECF No. 24 at 9, he cites no authority for this broad proposition. And Connecticut law holds that falsely accusing someone of child sexual abuse is, indeed, extreme and outrageous.

Accordingly, the Court will not dismiss Count Five.

d. Count Six: Harassment

Finally, the Court grants Defendant's motion to dismiss as to Plaintiff's criminal harassment claim in Count Six. Count Six of Plaintiff's complaint invokes Conn. Gen. Stat. § 53a-183(a), a criminal penal provision. ECF No. 13 at 106–07. It is well settled that "[p]rivate

individuals lack standing to assert criminal violations." *Joan T. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01251(MPS), 2023 WL 2600199, at *5 (D. Conn. Mar. 22, 2023) (citing *Coleman-Bey v. Childrens Aid Soc'y*, No. 19-CV-7911 (CM), 2019 WL 5693688, at *2 (S.D.N.Y. Nov. 4, 2019)). Defendant correctly observed that there is no civil cause of action here. ECF No. 24 at 9. Because this count clearly cannot be sustained in Plaintiff's civil suit, Defendant's motion to dismiss is granted as to Count Six.

## III. DEFENDANT'S MOTION TO STAY DISCOVERY

Having decided Defendant's motion to dismiss, the Court denies his motion to stay discovery as moot, as it sought to stay discovery until the motion to dismiss was resolved.

## IV. DEFENDANT'S MOTION FOR SANCTIONS

Finally, the Court denies Defendant's motion for sanctions, which seeks sanctions based on what Defendant claims are "a serious of intentional misrepresentations and omissions by Plaintiff, both in the instant matter" and in *Lee I*, in which Defendant was not a party. *See* ECF No. 32 at 1–2. In particular, Defendant alleges that Plaintiff misrepresented to the Court in this case that Defendant was personally served, and misrepresented his financial status to the Court in *Lee I*. *Id.*

### A. Legal Standard

Defendant moves for sanctions under Federal Rules of Civil Procedure 11, 16, and 26, and the Court's inherent authority. *Id.* at 1. These methods of sanctions differ in their purpose and operation.

First, courts have inherent powers to "punish for contempts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citation omitted). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly

and expeditious disposition of cases." *Id.* at 43 (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

The Federal Rules of Civil Procedure that provide for sanctions are more targeted. With respect to Rule 11, The "purpose of Rule 11 is to streamline litigation by thwarting the use of frivolous and abusive trial tactics." *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 47 (2d Cir. 1994). Rule 16(f) allows sanctions for parties or their attorneys who fail to carry out obligations related to scheduling or other pretrial orders. *See* Fed. R. Civ. P. 16(f). "The decision to impose sanctions under this rule is vested in the district court's sound discretion." *Richardson v. Nassau Cnty.*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995)). Rule 26(g) concerns an attorney or party's obligations in discovery, and is intended to deter and curb discovery abuses, including evasive responses, by "explicitly encouraging the imposition of sanctions." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 CIV 7618 (KMW) (HBP), 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009).

B. <u>Discussion</u>

*1. Rule 11 Safe Harbor & Other Federal Rules*

First, the Court concludes that Rule 11 sanctions are unwarranted because Defendant failed to comply with the Rule's "safe harbor" provision.

Rule 11 provides that a motion for sanctions must be served on the party at issue, but "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another

time the court sets." Fed. R. Civ. P. 11(c)(2). Known as the "safe harbor," the requirement to provide the opposing party notice of the motion—and, critically, an opportunity to withdraw or correct the offending issue—is "a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (holding that "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period"); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995) (finding district court erred in imposing sanctions when the motion was not filed separately and served on the opposing party twenty-one days before presenting it to the court).

Here, because Plaintiff was never served the Rule 11 motion, the safe harbor requirements were not met, and the Court will not entertain the motion on its merits under Rule 11.

Nor would imposition of sanctions under Rule 16(f), which pertains to failure to comply with scheduling and other pretrial orders, or Rule 26(g), which pertains to discovery abuses, apply here, as Defendant does not contend Plaintiff failed to comply with pretrial orders or committed discovery misconduct.

2. *Inherent Authority*

The only possible remaining basis for imposing sanctions, then, is the Court's inherent authority. The Court declines to exercise its authority to impose sanctions on the bases offered by Defendant.

First, Defendant offers no reason why the Court should impose sanctions upon Plaintiff in *this* action for Plaintiff's submissions in *Lee I*, in which Plaintiff was already sanctioned. Defendant asserts that, in *Lee I*, Plaintiff made false statements on a financial affidavit to be able to proceed *in forma pauperis* (IFP). ECF No. 32 at 3–4. That accusation is true; the Court found

as much and appropriately sanctioned Plaintiff for his submissions in *Lee I* by dismissing the complaint. *See* Order, *Lee I*, ECF No. 55. Plaintiff made serious misrepresentations, and they were treated seriously. But because Plaintiff's misrepresentations in *Lee I* are not connected to the present proceeding directly—nor to Defendant—there is no basis to impose further sanctions here.

Next, the Court declines to impose sanctions based on Plaintiff's representations to the Court that Defendant had been personally served. ECF No. 32 at 2–3. By way of background, Plaintiff docketed a waiver of service of summons executed by Defendant on September 22, 2025, which resulted in Defendant's deadline to respond to the complaint being set for November 17, 2026. *See* Waiver of Service, ECF No. 21. Then, on October 7, 2025, Plaintiff filed a motion for clarification, noting that because he did not receive a waiver of service from Defendant with respect to service of his original complaint (not the operative amended complaint), he had arranged for in-person service to be effected through a sheriff's office in Florida, and that the sheriff's office did, in fact serve Defendant on September 12, 2025. *See* Mot. for Clarification, ECF No. 22 (representing Plaintiff received the proof of service on October 4, 2025). Plaintiff thus requested that Defendant's deadline to respond to the complaint be advanced to October 3, 2025, based on the date of purported personal service, and that Plaintiff be reimbursed for the costs of service based on Defendant's failure to waive service. *Id.* at 2. Plaintiff attached the purported proof of service to his motion, which stated that the officer "spoke w/subj (Female) on property who adv. Subj would be out of town for approx. three weeks." *Id.* at 7. The Court denied Plaintiff's motion for clarification, observing that "[b]ased on the Court's review of documents annexed to Plaintiff's filing . . . it appears that that Defendant was not personally served." Order,

ECF No. 23. The Court left the Defendant's answer deadline of November 17, 2025, in effect. *See id.*

Plaintiff's interpretation of the proof of service as having successfully effected in-person service on Defendant was clearly erroneous, but the Court cannot find, on the present record, that Plaintiff acted in bad faith, as opposed to merely negligently. Plaintiff's misstatement that Defendant was personally served certainly reflects a lack of diligence in reviewing the proof of service. But, in fairness to Plaintiff, the proof of service contains a "X" next to the section indicating "INDIVIDUAL - NORMAL SERVICE," and leaves the section title "UNEXECUTED - NOTICE OF UNEXECTED" blank (though the handwritten note appears under the "unexecuted" section). ECF No. 22 at 7. A careful reading of the document—as the Court and Defendant undertook—evinces that the service was not completed. But the Court cannot necessarily find that Plaintiff acted in bad faith in representing to the Court that service was completed, given the misplaced "X."

Finally, given its finding above that Plaintiff did not engage in bad faith misconduct with respect to the service issues in this action, it cannot find that he has engaged in a pattern of intentional misrepresentation, as Defendant urges.

Thus, the Court declines to impose sanctions on Plaintiff, though it will not hesitate to do so in the future if Plaintiff makes further misrepresentations to the Court and/or acts in bad faith.

## V. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss, ECF No. 24, is GRANTED in part as to Counts Three, Four, and Six of Plaintiff's complaint, and DENIED in all other respects. Defendant's motion to stay discovery, ECF No. 47, is DENIED as moot, and Defendant's motion for sanctions, ECF No. 32, is DENIED.

Defendant shall answer the remaining allegations of the amended complaint by **October 21, 2026.** The parties are ordered to confer and submit a revised Rule 26(f) Report by **October 21, 2026.**

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE